MYERS (COOKE v.). See Cases Nos. 3,174 and 3,175.

## Case No. 9,985.

### MYERS v. COTTRILL.

[5 Biss. 465.] [1]

Circuit Court, E. D. Wisconsin. Oct., 1873.

INNKEEPERS—LIABILITY FOR LOSS—COMMERCIAL TRAVELER—NEGLIGENCE—ACTION BY HUSBAND FOR PROPERTY OF WIFE.

1. Where a guest at a hotel takes to his room valuable articles of merchandise and keeps them there for show and for sale, inviting purchasers to examine them, the hotel-keeper is relieved as to such merchandise from the special liability of the common law.

2. The fact that such guest sleeps in the room does not alter this rule.

3. The statute of Wisconsin does not alter this rule, for that did not contemplate the case of guests bringing quantities of merchandise to be placed in the safe, nor did it intend to compel an innkeeper to receive whatever merchandise his guests might choose to bring, nor to provide a safe to contain it.

4. These rules will not, however, under either the common law, or the statute, excuse the innkeeper for the negligence of either himself or his servants.

5. The innkeeper, knowing that such goods were in the room, should use reasonable diligence with reference to the condition and value of the property.

6. Negligence is a relative term, depending very much upon the circumstances of each case, and is frequently a mixed question of law and of fact.

7. Property belonging to the wife may be recovered for in an action brought by the husband, provided it was given to the wife by the husband.

8. The fact that the property of the wife was in the same room with the merchandise does not alone prevent him from recovering.

9. The innkeeper in order to avail himself of the state statute as a defense must show that he has literally complied with it.

This was an action by Samuel Myers against William H. Cottrill, the proprietor of the Plankinton House in Milwaukee, to recover the value of certain property alleged to have been stolen from his room in the

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

Plankinton House, on the 29th of May, 1872. The plaintiff and his brother were partners in business in Boston, and were in the habit of taking to different parts of the country for sale various articles of jewelry, which when thus taken were charged to the person taking it, and he was considered accountable to the firm for it. The plaintiff and his wife arrived at the Plankinton House on the 27th of May, 1872, and were assigned to room No. 80, on the third floor of the hotel, to which room were sent his trunks and certain packages, forwarded to him by express, containing a large quantity of watches, chains and various kinds of jewelry, of the value of from $15,000 to $16,000. The admitted object of the plaintiff's visit was to dispose of this property in the ordinary course of business, and immediately after his arrival he took part of it out of his trunks and arranged it in his room and from that time forward displayed it from time to time to different persons, and sold a considerable quantity of it. Either the plaintiff or his wife were in the room regularly except when absent at their meals. On the morning of the 29th of May, between eight and nine o'clock, the plaintiff and his wife left their room to go to breakfast, leaving it in its usual condition, locking the door, and taking the key with them. On their return, in about twenty minutes, they found the door open, papers strewn on the floor and several empty watch-cases scattered about, the trunks open, having the appearance of having been rifled of their contents, and watches and jewelry of the value of about $4,000 missing. The alarm was immediately given, the police called and an examination of the apartment made by them, but no clew was found to the perpetrators of the robbery. There was no appearance that the door had been broken open, and a key which on trial was found to open the door was discovered upon the bureau. In addition to this jewelry, there was also taken a gold watch and jewelry belonging to the plaintiff's wife, of the value of $400.

The statute of Wisconsin concerning innkeepers, which was relied upon by the defense, is as follows:

"Sec. 71. No innkeeper in this state, who shall constantly have in his inn, an iron safe, in good order, and suitable for the safe custody of money, jewelry, and articles of gold or silver manufacture, and of the like, and who shall keep a copy of this act printed by itself, in large, plain English type, and framed, constantly and conspicuously, suspended in the office, bar-room, saloon, reading, sitting and parlor room of his inn, and also a copy printed by itself in ordinary size plain English type, posted upon the inside of the entrance door of every public sleeping room of his inn, shall be liable for the loss of any such articles aforesaid, suffered by any guest; unless such guest shall have first offered to deliver such property lost by him to such innkeeper for custody in such iron safe, and such innkeeper shall have refused or omitted to take it and deposit it in such safe for its custody, and give such guest a receipt therefor.

"Sec. 72. * * * Any innkeeper shall be liable for any loss of any guest in his inn, caused by theft or gross negligence of the innkeeper, or any of his servants, anything to the contrary thereof in this act notwithstanding." 2 Tayl. St. Wis. 1871, pp. 1662, 1663.

It was conceded that the notice required by law to be posted in every room was not posted in the room occupied by the plaintiff.

Winfield Smith, for plaintiff.

1. The innkeeper is the insurer of the property of the guest within the inn. Hulett v. Swift, 42 Barb. 280, on appeal, 33 N. Y. 571; Calye's Case, 8 Coke 32; Mason v. Thompson, 9 Pick. 280; Sibley v. Aldrich, 33 N. H. 553; Richmond v. Smith, 8 Barn. & C., 9; Piper v. Manny, 21 Wend. 282; Morgan v. Ravey, 6 Hurl. & N. 265; Ramaley v. Leland, 43 N. Y. 539; Stanton v. Leland, 4 E. D. Smith, 88; Cashill v. Wright, 6 El. & Bl. 891; Shaw v. Berry, 31 Me. 478; Clute v. Wiggins, 14 Johns. 175; Bennet v. Mellor, 5 Term R. 273; Wilkins v. Earle, 44 N. Y. 172; Hawley v. Smith, 25 Wend. 642; Burrows v. Trieber, 21 Md. 320; Thickstun v. Howard, 8 Blackf. 535; Taylor v. Monnot, 4 Duer, 116.

2. At all events he is liable for any negligence, and a loss is prima facie evidence of negligence. McDaniels v. Robinson, 26 Vt. 316; Gile v. Libby, 36 Barb. 70; Johnson v. Richardson, 17 Ill. 302; Laird v. Eichold, 10 Ind. 212; Kiston v. Hildebrand, 9 B. Mon. 72.

3. The liability extends to goods and merchandise, as well as to the guest's personal baggage. Calye's Case, 8 Coke, 32; Johnson v. Richardson, 17 Ill. 302; Richmond v. Smith, 8 Barn. & C. 9; Piper v. Manny, 21 Wend. 282; Hawley v. Smith, 25 Wend. 642; Clute v. Wiggins, 14 Johns. 175; Farnworth v. Packwood, 1 Starkie, 249; McDaniels v. Robinson, 26 Vt. 333; Newson v. Axon, 1 McCord, 509; Armistead v. White, 6 Eng. Law & Eq. 349; Mason v. Thompson, 9 Pick. 280; Morgan v. Ravey, 6 Hurl. & N. 265; Taylor v. Monnot, 4 Duer, 116; Berkshire Woollen Co. v. Proctor, 7 Cush. 417; Needles v. Howard, 1 E. D. Smith, 54; Burgess v. Clements, 4 Maule & S. 306; Bennet v. Mellor, 5 Term R. 273; Towson v. Havre de Grace Bank, 6 Har. & J. 47; Kiston v. Hildebrand, 9 B. Mon. 72; Wilkins v. Earle, 44 N. Y. 172; Hulett v. Swift, 33 N. Y. 571; Bendetson v. French, 46 N. Y. 266; Houser v. Tully, 62 Pa. St. 92; Kellogg v. Sweeney, 1 Lans. 397, 46 N. Y. 291, 296. See Manning v. Hollenbeck, 27 Wis. 202.

4. Slight, or even considerable negligence of guest does not exonerate innkeeper. Classen v. Leopold, 2 Sweeney, 705; Shoecraft v. Bailey, 25 Iowa, 553; Wilkins v. Earle, 44 New York, 172; Cashill v. Wright, 6 El. & Bl. 891; Buddenberg v. Benner, 1 Hilt. 84; Rich-

mond v. Smith, 8 Barn. & C. 9; Profilet v. Hall, 14 La. Ann. 524; Berkshire Woollen Co. v. Proctor, 7 Cush. 417; Woodward v. Birch, 4 Bush, 510; Quinton v. Courtney, 1 Hayw. (N. C.) 40; Burrows v. Trieber, 21 Md. 320.

5. Even if personal and actual notice to the guest of the safe, etc., would bring the case within the statute, so as to relieve the innkeeper (Purvis v. Coleman, 21 N. Y. 111), nothing short of such notice would have that effect (Lima v. Dwinelle, 7 Alb. Law J. 44; Bodwell·v. Bragg, 29 Iowa, 232; Richmond v. Smith, 8 Barn. & C. 9).

6. Though a guest may become his own insurer by taking exclusive charge of his room, yet the innkeeper is not relieved merely because he gives the guest a key. More especially, when as in this case, the keys of other rooms in the hotel unlock the plaintiff's door. Farnworth v. Packwood, 1 Starkie, 249; Newson v. Axon, 1 McCord, 509; Epps v. Hinds, 27 Miss. 657; Berkshire Woollen Co. v. Proctor, 7 Cush. 417; Pope v. Hall, 14 La. Ann. 324; Johnson v. Richardson, 17 Ill. 302; Burgess v. Clements, 4 Maule & S. 306.

7. The innkeeper's liability extends to property brought into the hotel by the guest, though it belong to others. Johnson v. Richardson, 17 Ill. 302; Epps v. Hinds, 27 Miss. 657; Berkshire Woollen Co. v. Proctor, 7 Cush. 417; Needles v. Howard, 1 E. D. Smith, 54; See Manning v. Hollenbeck, 27 Wis. 202.

8. The merchandise in question was committed to the plaintiff by the firm of which he was a partner, charged to his account, and is to be accounted for by him, and although the partner has an equitable interest, the plaintiff may properly sue alone, as entitled to the sole custody, and as "trustee of an express trust" under the Wisconsin statute, which is taken from the New York Code. Rev. St. Wis. p. 858, c. 122, § 14; Kimball v. Spicer, 12 Wis. 668, 671; Gardinier v. Kellogg, 14 Wis. 605; People v. Norton, 9 N. Y. 176; Minturn v. Main, 7 N. Y. 220.

9. The letter of the plaintiff offered in evidence does not prove a contract. If it is evidence of a contract, such contract is not champertous. "Such an agreement is neither unlawful, immoral, nor disreputable." Allard v. Lamirande, 29 Wis. 502, 508.

Cary & Cottrill, for defendant.

DRUMMOND, Circuit Judge, after stating the facts, charged the jury as follows: The counsel for the defendant insist that he is not liable for the merchandise stolen, because at the time of the alleged loss it belonged jointly to the plaintiff and his partner. But as I understand the facts, although there was no absolute sale of the property by the firm to the person who thus took it for sale, it was nevertheless considered as in his custody and to be accounted for by him to the firm in any event. This being so, the court instructs you that inasmuch as the property was within the custody and control of the plaintiff, he was a trustee of the property, accountable to the firm, and therefore can maintain an action for it in his own name.

The defendant was an innkeeper at the time. He was subject to the law applicable to innkeepers as to the property of guests in his house, either under the common law or the statute law of this state. And the first question is, whether he was liable for the property, confessedly mere merchandise and not ordinary baggage of the plaintiff and his wife, which was in their room at the time they were the guests of the house.

The general rule of the common law undoubtedly was and is that an innkeeper is responsible for the property of a guest brought within the house, or within that which may fairly be considered as appurtenant to the house, and so within his custody. And perhaps it is not going too far to say that it is very nearly an absolute liability, that is he is bound to see that the property is kept safe, as it is in his custody in contemplation of law. But conceding that to be the rule of the common law do the facts in this case change the rule?

I think this is the true rule of law on the subject. If a person, going into a hotel as a guest, takes to his room not ordinary baggage, not those articles which generally accompany the traveler, but valuable merchandise, such as watches and jewelry, and keeps them there for show and sale, and from time to time invites parties into his room to inspect and to purchase, unless there is some special circumstance in the case showing that the innkeeper assumes the responsibility as of ordinary baggage, as to such merchandise, the special obligations imposed by the common law do not exist, and the guest, as to those goods, becomes their vendor and uses his room for the sale of merchandise, and really changes the ordinary relations between innkeeper and guest.

It is, we know, as a matter of experience impracticable for the landlord to notice and vouch for every person who goes into the room. The guest permits them to stay as long as he pleases, and shows his goods and sells them to whomsoever he pleases. We must presume that it is not for that purpose that the innkeeper allows persons to come to his house and enter his rooms, and the fact that the vendor may sleep in the room I do not think changes the rule. Therefore the court will leave it to you as a question of fact to say whether or not the evidence brings the case within the conditions stated; that is, whether or not the plaintiff did use room No. 80 as a place for showing and selling his merchandise as such. If he did, in the absence of evidence proving the contrary, then I think, as to that, the extraordinary obligations of the innkeeper did not exist.

One point to be considered is as to the ef-

fect of the special act of the legislature of this state as to the liability of innkeepers. It is a question not free from difficulty perhaps, but I am inclined to think that the law of Wisconsin did not contemplate the case of guests bringing to the inn quantities of merchandise to be placed in the safe. The law may be said to assume that there is a safe in the house, but it is not to be assumed that is was within the intention of the legislature that an innkeeper should have a safe so large as to retain any quantity of merchandise that guests might bring into the house, and thus turn the hotel into a warehouse. It is very difficult, undoubtedly, to decide precisely what meaning is to be attached to the language of the statute, when it speaks of "money, jewelry, and articles of gold and silver manufacture, and of the like," whether, in other words, it intends to include the ornaments which a lady, for example, may have, and from time to time wear about her person, and which may be and often are of very great value. I think, however, that it is clear that it was not within the contemplation of the lawmakers to compel the innkeeper to take in any quantity of merchandise, however bulky or valuable it might be, which the guests might choose to bring into the house.

Here the plaintiff brought into this house a large quantity of watches, chains, and other jewelry. They were confessedly not used either by himself or his wife as travelers, but he was there with them as a merchant selling goods, and I do not think the statute contemplates a case of that kind. So that it depends upon the general principles of law whether the defendant is liable for the merchandise if it were taken.

Although in one aspect of the case the defendant might not be liable, still the fact that these articles were there as merchandise, and were exposed and sold in the manner stated, would not prevent the plaintiff from recovering the value of the property if there was any negligence on the part of the defendant or of his servants, for I am not prepared to go so far as to say that the principle which I have stated will excuse the innkeeper for the negligence either of himself or of his servants. But that is a question to be determined by the jury under the instructions of the court; for example, whether or not the defendant knew that the goods were there and shown and sold in the manner stated; whether or not he had provided the proper means of security for the goods. I will not say that it was incumbent on the defendant if he knew they were there to keep a watchman in the hall and at the corners to watch the ingress and egress of every person that might come or go. But he should have used reasonable diligence with reference to the condition of the property, as one whose duties and responsibilities may have been qualified by the special circumstances of the case, he being to some extent relieved from the extraordinary responsibility of an innkeeper.

And it is also proper for you to consider whether or not there was a key to the room, or whether there were keys of other rooms that would open the door of No. 80, and which would enable any person or any guest in the house to enter the room, because, of course, a guest may be a thief as well as an outside intruder or the servants of a hotel. Then if the defendant or his servants were guilty of negligence, and of course if his servants abstracted the property, the defendant would be liable.

Another question proper for the jury to consider is whether or not the plaintiff was himself guilty of any negligence. Negligence is a relative term depending very much upon the circumstances of each case. We feel it our duty sometimes as a court to say, under conceded facts of a case, whether or not they constitute negligence, and to instruct a jury absolutely that such facts do or do not constitute negligence. At other times, it is a mixed question of law and of fact, partly for the court and partly for the jury to determine, whether or not there is negligence in a given case.

A person might be in a hotel as an ordinary guest, and protected in every way in which a guest could be in his property, and yet might be guilty of such negligence as to prevent him from recovering for its loss. For example, if a man occupies a room in a hotel and goes out and leaves his door open, and on his table, exposed to view, a large sum of money, where persons are passing backward and forward in the hall, there perhaps would not be a difference of opinion. Every man would say the guest had no right to go out of his room and leave his door open, and a large sum of money thus exposed, tempting the cupidity or the criminality of any person who might happen to see it. That may serve as an illustration. I think that we may say that there is more care required of a guest in a hotel, where he has articles of great value in his room, and especially when he is aware that it is known by many persons that they are there, than if he had but ordinary baggage. Now it is for you to say, taking the testimony of the plaintiff, whether there was any want of due care on his part which contributed in any way to the loss of this property. He says—and if that is true, and you believe that statement, of course it goes very far to show that there was a very considerable amount of care exercised as to the custody of this property—that either he or his wife was always there except when they went to their meals.

It is insisted on the part of the defendant that the value of the property which belonged to the wife, and which it is alleged was taken, cannot be recovered in this action. I shall instruct you that it can be recovered, provided you believe from the evidence that the property lost was given to the

wife by the husband. For it depends upon different rules from those stated in relation to the merchandise. It is said that there was about $400 worth of property of the wife taken, one article of which was a very valuable watch.

I am not prepared to say that if the plaintiff had those goods in the room, and was showing and selling them, and they together with other property belonging to his wife were taken, that circumstance alone would prevent him from recovering for the property of his wife. That may depend upon the construction to be given this special act of the legislature upon the subject. It is very difficult, as I have stated, to limit or qualify this act of the legislature so as to exclude the ordinary articles of ornament which a lady may be in the daily habit of wearing about her person. For example, I hardly think that it could have been the intention of the legislature to require every guest that entered a house to deposit his watch in the safe of the hotel.

Mr. Cottrill: Will your honor allow me to state that in a case at Madison the supreme court of this state expressly held that the legislative act covered the watch of the guest which he had put under his pillow. Stewart v. Parsons, 24 Wis. 241.

THE COURT: Very well. If the supreme court of this state has so held, and it is the settled law of this state, of course we may feel obliged to acquiesce in that decision, and to rule accordingly. I was about to say that I doubted very much whether it was the intention of the law to compel every man when he went to bed, instead of putting his watch under his pillow or somewhere where he could see the hour, to put it in the safe, but if the supreme court of this state has so declared, we will acquiesce in that decision. Our rule is to follow the decisions of the supreme court of the state. I would like to see that decision. (Counsel produces it.) Well, if that is the law of this state, then I think it my duty to say to you that before the innkeeper would be exempt from liability for the loss of the wife's property he must show that he has literally complied with the law. He must do all these things specified in the act, and prove them, in order to exempt himself from liability. And if this decision is to be received, and these facts are all proven, then I suppose that the innkeeper would not be responsible for the property of the wife. Otherwise he would be. Now, in regard to the wife's property, if the plaintiff has been guilty of negligence, of course the same rule would apply as I have stated it, and so if the defendant or his servants had been guilty of negligence, even if he had complied with the act of the legislature, because the law excepts the negligence of the innkeeper or his servants.

The jury returned a verdict of $456.15, the value of the watch and jewelry belonging to Mrs. Myers, with interest.